```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

DARRYL CUNNINGHAM                      *        CIVIL ACTION
                                       *
VERSUS                                 *        NO. 09-8046
                                       *
TERREBONNE PARISH CONSOLIDATED         *        SECTION "B"(1)
GOVERNMENT, ET AL.                     *
```

## ORDER AND REASONS

Before the Court is Plaintiff's Motion for Partial Summary Judgment seeking summary judgment on his claims of First Amendment retaliation, a violation of his right to be free from unreasonable search and seizure under the Fourth Amendment, and his Louisiana State law invasion of privacy claims, leaving only the issue of damages for trial. (Rec. Doc. No. 23). Defendants' have filed a memorandum in response to and opposing the instant motion at Rec. Doc. No. 26.

For the reasons articulated below, **IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Rec. Doc. No. 23) be and is hereby **DENIED**.

I. *Cause of Action and Facts of Case*

This case, brought under 42 U.S.C. § 1983, arises from actions allegedly taken by officials within the Houma Police Department ("HPD"), a department of the Terrebonne Parish Consolidated Government ("TPCG"). The City of Houma Municipal Fire and Police Civil Service Board ("CSB") is comprised of five members and "represents the public interest in matters of personnel

1

administration in the Fire and Police services of the City of Houma/[TPCG]."[1]  (Rec. Doc. No. 23-1 at 1)

Plaintiff, currently a Lieutenant with the HPD alleges that, on December 11, 2008, after hearing other officers discussing the upcoming election for the HPD position on the CSB and, not having seen any posted notice of the vacancy, he approached HPD Chief Todd Duplantis regarding the notice of the vacancy.[2]  That evening, Plaintiff contacted the Houma Courier, the newspaper that publishes notices, agendas etc. for the CSB.  (Rec. Docs. No. 1 at 3; 23 at 2)  Chief Duplantis contends that he spoke with his secretary, Donna Wedgeworth, who said she had posted the notice, and with several officers who said they had seen the notice posted timely; Duplantis then related this information to Plaintiff on December 12, 2008.  (Rec. Doc. No. 26 at 3)  After leaving a message at the Courier and receiving a return call, Plaintiff was referred to Courier reporter Matthew Pleasant who said he had no knowledge of the CSB vacancy.  (Rec. Doc. No. 23-1 at 2)  A few days later, Chief Duplantis contends he received a call from Pleasant regarding the notice letter on the HPD's official bulletin board but Pleasant

---

[1] The board's membership consists of one member elected from the Fire Department, three from the general public, and a final member elected from the Police Department; notice of an election of the Police Department member permeates a substantial number of Plaintiff's claims in the instant case.

[2] La. R.S. 33:2476 requires the chief of both the Fire and Police department to post "for a fifteen day continuous period immediately preceding the election, a notice thereof on the bulletin board of each station house of his department . . . ."

would not tell the Chief from whom he discovered this information. (Rec. Doc. No. 26 at 3) Roughly thirty minutes later, Plaintiff was called into the Chief's Office, also present was Captain Hood, Plaintiff's immediate supervisor wherein Chief Duplantis asked Plaintiff if he had contacted the Courier and upon receiving an affirmative response, told him that it violated HPD policy to contact the media.[3] (Rec. Doc. No. 23-5 at 7) Later, Chief Duplantis commenced an Internal Affairs investigation surrounding Plaintiff's contacting the Courier by approaching Lieutenant Wolf who normally investigated such a things; however, Wolf was reluctant to commence an investigation so Chief Duplantis contacted Captain Russell in charge of the detective bureau and instructed him to assign a detective to this investigation.[4] *Id.* at 11. Detective Theriot was assigned to the investigation of which Plaintiff was informed December 17, 2008. (Rec. Doc. No. 23-1 at 3) In his deposition, taken August 24, 2010, Det. Theriot states that he had never, before the internal affairs investigations of

---

[3] The section of HPD policy which Respondents cite in their opposition and which is referenced in the Notice of Counseling subsequently placed in Plaintiff's file is Section 35 Public Statements and Appearances "which states a member shall not publicly represent himself as an employee of the [HPD] and publicly criticize or ridicule the [HPD], its policies or other members by speech, writing, or other expression, where such . . . is defamatory, obscene, unlawful, or undermines the effectiveness of the [HPD]." (Rec. Doc. No. 23-11; *see also* Rec. Doc. No. 26 at 14).

[4] In his deposition, Chief Duplantis says that Lieutenant Wolf was reluctant to investigate his secretary, Donna Wedgeworth's grievance against Plaintiff filed as she felt Plaintiff was accusing her of lying about timely posting the notice of election, because Wolf felt it was "a minute thing, didn't feel it was serious enough to investigate." (Rec. Doc. No. 25-5 at 8, ll 1-5).

the Plaintiff, nor has he since conducted an internal affairs investigation.[5]  (Rec. Doc. No. 26-5 at 8, ll 3-18)

On December 22, 2008, Theriot went to  the District Attorney's Office to inquire whether he could obtain Plaintiff's cell phone records.   (Rec. Doc. No. 26-5 at 23)   Plaintiff's cellular telephone is a personal cell phone; however, he receives a monthly stipend from the HPD to pay toward his cell phone bill. (Rec. Doc. No. 23-1 at 4; citing Plaintiff's deposition at Rec. Doc. No. 23-4 at 3-5)  Assistant District Attorney ("ADA") Dennis Elfert told Theriot that would be possible and after some difficulty, Theriot handed Elfert a subpoena request for Plaintiff's cell phone records which Elfert signed.  (Rec. Doc. No. 26-5 at 23)  Theriot then met Judge Bethancourt in the courthouse hallway who signed the subpoena request after Theriot spoke with him, the Clerk of Court's office took the request and issued  Theriot a subpoena for the requested December 10, 2008 through December 18, 2008 time period. (Rec. Doc. 23-16 at 3-4).  The Clerk then gave Theriot the subpoena and the subpoena request back which he then faxed to the phone company. (Rec. Doc. No. 26-5 at 23-24)  Theriot says he was the only person

---

[5]The second internal affairs investigation of Plaintiff centered on whether Plaintiff removed a piece of mail from Donna Wedgeworth's mail box; Plaintiff admits he opened it by mistake, taped the envelope closed and placed it back in the mailbox.  As Lieutenant Wolf would not commence this investigation, Det. Theriot handled this as well, this investigation was found to be unsustained and Plaintiff was given reprimands for criminal mischief and truthfulness, ultimately however, the CSB overturned the charge of criminal mischief and the 32nd Judicial District Court overturned the charge of truthfulness.  (Rec. Doc. No. 23-1 at 5)(see also Rec. Doc. No. 23-19 3-5, 7).

who reviewed Plaintiff's phone records.  Later the same week, Theriot received a call from ADA Elfert who told him the subpoena for Plaintiff's phone records had been "erroneously issued" and that "all records should be returned to him immediately."  (Rec. Doc. No. 26 at 6)  ADA Elfert came to HPD headquarters and took all phone records from Theriot; Theriot retained a copy of the subpoena and subpoena request.  *Id.*

On December 19, 2008, Plaintiff was placed on a 60 day administrative leave so that the investigations might be conducted (Rec. Doc. No. 23-14 at 1-2)  On January 15, 2009, Theriot found there was insufficient evidence to clearly prove or disprove charges in the internal affairs investigation regarding Plaintiff's contact with the Courier; Theriot marked the complaint as "unsustained" and this finding was related to Plaintiff in a memorandum.  (Rec. Doc. No. 23-18 at 1-2)

On his next performance evaluation, March 18, 2009 plaintiff received a performance evaluation on which he was given an overall rating of 75/100.  (Rec. Doc. No. 23-15 at 1-2).  In the "Employee Comments" section, plaintiff wrote that it was "the lowest evaluation I have ever received in my career."  *Id.*

A.   *Contentions of Movant*

Movant contends that his communication with the Houma Courier "did not involve his official duties as a police lieutenant." (Rec. Doc. No. 23-1 at 3).  He contends that, as a result of this

communication he was retaliated against for exercising his right to free speech guaranteed by the First Amendment made applicable against the States through the Due Process Clause of the Fourteenth Amendment. (Rec. Doc. No. 23-1). Movant contends this retaliation took the form of two internal affairs investigations, a notice of counseling being placed in his file, being placed on a 60 day administrative leave, receiving the "lowest [performance] evaluation of his career" on March 18, 2009, and a denial of a salary increase following that evaluation. *Id*. 23-1 at 3-4, 10.

Movant also contends that the HPD's subpoenaing and reviewing his cellular telephone records violated his right to be free from unreasonable search and seizure guaranteed him by the Fourth Amendment, made applicable against the States via the Fourteenth Amendment. *Id*. at 11-12. (*see also Mapp v. Ohio*, 367 U.S. 643 (1961)). Movant finally contends that Defendants' actions constitute invasion of privacy under Louisiana State tort law and argues that there exists no genuine issue of material fact as to preclude summary judgment on any of his claims. (Rec. Doc. No. 23-1 at 12-13) Movant submits that summary judgment should be granted and trial be held solely on the issue of damages. *Id*.

B.   *Contentions of Respondents*

Respondents contend that Movant fails to satisfy the elements of a First Amendment retaliation claim. (Rec. Doc. No. 26 at 7) Respondents argue (1) that no adverse employment action was taken

(2) that Movant's speech was either (a) not protected under the First Amendment or (b) was not on a matter of public concern, and (3) that as TPCG has taken no adverse employment action against Movant, there can be no finding that Movant's actions were the motivating force behind any adverse employment action taken by respondent. Notably, Respondents do not dispute the validity of Movant's suit under 28 U.S.C. § 1983, nor do they mention the defense of qualified immunity, but begin by disputing Movant's claim of retaliation under the First Amendment.

## II. *Law and Analysis*

A.  *Summary Judgment Standard*

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate

that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

B.  *First Amendment Retaliation*

The United States Court of Appeals for the Fifth Circuit has outlined four elements of an employee's claim of retaliation in violation of his rights under the First Amendment. *Teague v. City of Flower Mound, Tex.*, 179 F.3d 377 (5th Cir.1999).

> First, the Plaintiffs must suffer an adverse employment decision. Second, the Plaintiffs' speech must involve a matter of public concern. Third, the Plaintiffs' interest in commenting on matters of public concern must outweigh the Defendants' interest in promoting efficiency. Fourth, the Plaintiffs' speech must have motivated the Defendants' action.

*Id.* (internal citations omitted). The Fifth Circuit previously held a more constricted view of what action constituted an "adverse employment decision" defining them as "discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Pierce v. Texas Dept. of Criminal Justice, Institutional Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994). However, the United States Supreme Court has

held the definition of "adverse employment action" to be broader than that articulated by the Fifth Circuit in *Pierce*. *Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 57 (2006).

> We conclude that the antiretaliation provision [of Title VII] does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace. We also conclude that the provision covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant. In the present context that means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.

*Id*. The Fifth Circuit has adopted this wider view post *Burlington*.[6] Respondents submit that those actions which Movant claims to be adverse were not. Respondents state that the Counseling Notice placed in Movant's file has had no effect on his employment as Movant has been promoted to the HPD's Internal Affairs Office. (Rec. Doc. No. 26 at 9). Respondents contend that the second internal affairs investigation was not involved with the investigation regarding Movant's communication with the Houma Courier and is not adverse to Movant. *Id*. Respondents further asserts that the administrative leave on which Movant was placed arose by decision of Chief Duplantis and "had nothing to do with the Houma Courier contact." *Id*. (citing Duplantis' deposition, Rec. Doc. No. 26-4 at 26-27). Finally, Respondents submit that

---

[6] *See Thomas v. Kent*, No. 09-30764, 2010 WL 4561165, at *2 (5th Cir., Nov. 10, 2010).

9

Chief Duplantis considered performance evaluations in his determination of awarding merit raises and that "there were reasons not to give [Movant] a merit raise in 2009 totally separate from the Courier incident." (Rec. Doc. No. 26 at 10). Accordingly, as Respondents have shown that there exist genuine issues of fact as to the first element of Movant's First Amendment retaliation claim, namely whether the action taken by Defendants constituted "adverse employment action" summary judgment on this claim is **DENIED**.[7]

C.   *Fourth Amendment Claims*

In *City of Ontario, Cal. v. Quon*, 130 S.Ct. 2619 (2010), the a police officer brought suit against the city, it's police department, and police chief pursuant to § 1983 contending that the police department's review of text messages sent and received on his department owned and issued pager violated the Fourth Amendment's proscription of unreasonable searches and seizures. The Court held that the City's actions were reasonable and accordingly, did not violate the Fourth Amendment. *Id*. at 2633. Distinguishing the instant action from *Quon*, among other elements, is the HPD's lack of a policy similar to the "Computer Usage, Internet and E-Mail Policy" in *Quon* announced and applied to all employees before the pagers were issued. *Id*. at 2625. A provision

---

[7]As genuine issues of fact exist regarding the first element of a First Amendment retaliation claim, the Court need not address whether there exist issues of fact surrounding the remaining three elements of such a claim.

of the policy stated that the City "reserves the right to monitor and log all network activity including e-mail and Internet use, with or without notice. Users should have no expectation of privacy or confidentiality when using these resources." *Id*. The Court noted that the Plaintiff there signed a statement acknowledging that he read and understood the Computer Policy. *Id*.

In addition to the lack of any similar policy of the HPD and the parties' acknowledgment that Movant's cellular phone was his own; here the HPD merely pays there employees a stipend to pay for the business use of their phones.  (Rec. Doc. No. 23-1 at 12) Movant states only that *Quon* is distinguishable from the case *sub judice* which, of course, is correct in many key respects.

Respondents contend that *Quon* precludes summary judgment as a balance of the legitimate employer interest in "unusual phone calls . . . strongly implying" that Movant was "contacting the Courier outside the boundaries prescribed by the HPD Policy and Procedures Manual" against the "minute invasion of obtaining [Movant's] cell phone records which contained only numbers dialed and received, but not names or substance . . . and which were examined by only **one** HPD employee" shows genuine issues of material fact to be determined at trial.[8]  (Rec. Doc. No. 26 at 14)(emphasis in

---

[8]Respondent does argue alternatively that, if Movant's phone records were improperly subpoenaed resulting in a violation of Movant' rights guaranteed by the Fourth Amendment via the Due Process Clause of the

11

original).

The *Quon* Court, wisely counseled that "[t]he Court must proceed with care when considering the whole concept of privacy expectations in communications made on electronic equipment owned by a government employer. The judiciary risks error by elaborating too fully on the Fourth Amendment implications of emerging technology before its role in society has become clear."[9] *Quon* 130 S.Ct. at 2629. Accordingly, as Respondents have raised genuine issues of fact as to whether Movant had a reasonable expectation of privacy in the information subpoenaed in the instant case, summary judgment of Plaintiff's Fourth Amendment claims should be **DENIED**.

D.   *Louisiana Tort Claim - Invasion of Privacy*

Movant states that "obtaining [Movant's] personal cell phone records in a circumstance where Plaintiff neither committed a crime nor violated any police department policy was unreasonable and seriously interfered with [Movant's] privacy interests." (Rec.

---

Fourteenth Amendment then "that action was done solely by the Terrebonne Parish [D.A.'s] Office inasmuch as they alone were the gatekeepers of the issuance of district attorney subpoenas." (Rec. Doc. No. 26).

[9] The Court went on to note that "Cell phone and text message communications are so pervasive that some persons may consider them to be essential means or necessary instruments for self-expression, even self-identification. That might strengthen the case for an expectation of privacy. On the other hand, the ubiquity of those devices has made them generally affordable, so one could counter that employees who need cell phones or similar devices for personal matters can purchase and pay for their own. And employer policies concerning communications will of course shape the reasonable expectations of their employees, especially to the extent that such policies are clearly communicated." *Quon* 130 S.Ct. at 2630.

Doc. No. 23-1 at 12-13. This submission relies on arguments previously made regarding the Fourth Amendment and summary judgment on this claim and is **DENIED** for the same reasons.

### III. *Conclusion*

Accordingly, and for the reasons above enunciated,

**IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Rec. Doc. No. 23) be and is hereby **DENIED.**